IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: GEOSTELLAR, INC. | BK. NO. 3:18-BK-0045 |
| MARTING P. SHEEHAN, Trustee of the Bankruptcy Estate of Geostellar, Inc., | |
| Plaintiff, | Civil No. 3:19-ap-00024 |
| v. | |
| DAVID A. LEVINE, and INDECO UNION, a Delaware Corporation, | |
| Defendants. | |

# DEFENDANTS' MEMORANDUM IN SUPPORT OF
# MOTION TO DISMISS AND STRIKE

# INTRODUCTION

Geostellar, Inc. ("Geostellar") brings the present Complaint against David A. Levine ("Mr. Levine") and Indeco Union challenging Mr. Levine's decisions to attempt to adapt Geostellar out of its admittedly-unprofitable work in solar power installation into the then-booming cryptocurrency industry and alleging that he improperly pursued his own separate cryptocurrency project. Even assuming per arguendo that Geostellar's factual allegations are correct, there are several procedural reasons why this Complaint cannot go forward.

First, both of the contracts upon which this Complaint is based flatly forbid Geostellar from bringing its Complaint in this Court. Instead, one of these contracts requires these claims to be resolved in binding arbitration, while the other requires any litigation to be brought in Wilmington, Delaware. Regardless of which of these provisions applies to any given allegation, the result is the same: the Complaint cannot be brought in this Court and must be dismissed. Moreover, even if the Complaint could be brought in this Court, most of Geostellar's claims are insufficiently pled and/or contradicted by the relevant law.

# FACTUAL ALLEGATIONS

Disregarding as we must any conclusory assertions, *see, e.g.*, *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009), as well as any irrelevant statements regarding purported injury to third parties, *see, e.g.*, *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002) (recognizing that parties only have standing to assert injuries to themselves), Geostellar alleges as follows:[1]

---

[1] Defendants recite the allegations in the Complaint pursuant to the standard for analyzing a Motion to Dismiss for Failure to State a Claim. Nothing in this recitation should be interpreted as an admission of any of the facts recited herein. Should the present motion be denied, Defendants will file an Answer in which they will admit or deny the various allegations of the Complaint.

1

Geostellar describes its business as using proprietary software to provide people seeking to install solar power systems with information on vendors, installers, and lenders. (Compl. 4 ¶ 12.) Geostellar claims that prior to the challenged actions it was meeting expenses, but not generating profits, by arranging thirty installation projects per month. (*Id.* at 4 ¶ 12.) Despite admitting that it was generating no net profits, Geostellar claims that continuing in this way would have somehow enabled it "to raise on going [sic] capital and other financing to cause the growth and ultimately to the long term profitability of Geostellar." (*Id.* at 4 ¶ 15.)

At some point, Mr. Levine became Geostellar's Chief Executive Officer and a member of its Board of Directors. (*Id.* at 4-5 ¶ 16.) While Geostellar does not explicitly state the date when Mr. Levine received these offices, it notes that he signed an employment agreement with Geostellar on July 28, 2016 (the "Employment Agreement"). (*Id.* at 5 ¶ 18; *see* Compl. Ex. A.) In addition to creating various duties between the parties, this Employment Agreement contains the following arbitration clause:

> 7.11 **Arbitration.** To ensure the rapid and economical resolution of disputes that may arise in connection with the Executive's employment with the Company, the Executive and the Company agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to the enforcement, breach, performance or interpretation of this Agreement, the Executive's employment, or the termination of the Executive's employment, shall be resolved, to the fullest extent permitted by law, by final, binding and confidential arbitration in Martinsburg, West Virginia, conducted by the Judicial Arbitration and Mediation Services, Inc. ("*JAMS*") or its successor, under the then applicable rules of JAMS. The Executive and the Company acknowledge that by agreeing to this arbitration procedure, each party waives the right to resolve any dispute through a trial by jury or judge or administrative proceeding. The Arbitrator shall: (a) have the authority to compel adequate discovery for the resolution of the dispute and to award such relief as would otherwise be permitted by law; and (b) issue a written arbitration decision including the arbitrator's essential findings and conclusions and a statement of the award. The arbitrator shall be authorized to award any or all remedies that the Executive or the Company would be entitled to seek in a court of law. Nothing in this Agreement is intended to prevent either the Executive or the Company from obtaining injunctive relief in court to prevent irreparable harm

2

> pending the conclusion of any such arbitration. Notwithstanding anything herein to the contrary, the provisions of Section 7.11 shall not apply to any issue or dispute arising under the Assignment of Inventions Agreement. The parties shall split the costs of arbitration.

(Compl. Ex. A at 11-12 ¶ 7.11.) The Employment Agreement also has a choice-of-law clause stating that it shall be governed by West Virginia law. (*Id.* at 11 ¶ 7.10.)

Geostellar has also submitted a second contract between it and Mr. Levine, which is signed that same date as the Employment Agreement and titled "Employee Proprietary Information, Inventions, Non-Solicitation and Non-Competition Agreement" ("the Assignment of Inventions Agreement"). (*See* Compl. Ex. B.) This contract appears to be an addendum to the Employment Agreement. (*See* Compl. 5-6 ¶¶ 21-22; Compl. Ex. A at 4 ¶ 3; Compl. Ex. B at 1.) The Assignment of Inventions Agreement contains the following choice of law and forum-selection clause:

> **12.1   Governing Law: Consent to Personal Jurisdiction.** This Agreement will be governed by and construed according to the laws of the State of Delaware. Any action to enforce or construe this Agreement shall be exclusively initiated in any federal or state court of competent jurisdiction in Wilmington, Delaware and the parties consent to the personal jurisdiction of those courts.

(Compl. Ex. B at 3 ¶ 12.1.)

Geostellar has no complaints about Mr. Levine's first year of employment. Instead, Geostellar's first objection is that in July 2017, a year after being hired, Mr. Levine "changed the focus of Geostellar, Inc." from working on the installation of solar power (a business that Geostellar admits that it could barely break even on) to the development of a cryptocurrency called Zydeco. (Compl. 7 ¶¶ 26-28.)

On September 21, 2017, Mr. Levine made a presentation to Geostellar's Board of Directors in which he explained what he was doing with Zydeco and how it would benefit Geostellar. (*Id.* at 7 ¶ 31.) Specifically, the Complaint implies that Zydeco was to be backed by watts of solar energy. (*Id.* at 7 ¶ 32.) Geostellar claims that this presentation involved a document that stated

3

that Zydeco would "ha[ve] some intrinsic value because of this relationship," and that Zydeco supposedly could not have had such value. (*Id.* at 7 ¶¶ 32-33.) However, Geostellar does not provide a copy of this document or quote the statement that it claims is false.

On September 25, 2017, Mr. Levine founded a company called Applied Philosophy Lab, P.B.C. ("APL"). (*Id.* at 7 ¶ 35.) Geostellar states that APL "was intended to develop 'smart contracts, digital tokens, or other digital representations of assets on a distributed blockchain ledger, to finance, track and compensate for the shared ownership of assets, such as solar energy systems, energy storage, smart dwelling sensors and controls, appliances, carpeting real estate, water, soft commodities, vehicles, smart city infrastructure, and other goods and services as well as compensate the suppliers of the assets and collect revenue from those who purchase the assets or subscribe to the goods and services, as well as compensate the suppliers of the asset.'" (*Id.* at 11-12 ¶ 58.) In simpler terms, this means that APL was created to develop cryptocurrency backed by a wide variety of assets. Geostellar does not indicate which document it is quoting in this allegation, nor does it attach a copy of that document to its Complaint. On November 3, 2017, Mr. Levine founded a company called Indeco, LLC as a subsidiary of APL. (*Id.* at 7, 12 ¶¶ 36, 58.)

Geostellar alleges that on November 6, 2017, Mr. Levine terminated "all" of its employees, and that Indeco, LLC hired some of these employees on the following day. (*Id.* at 10-11 ¶¶ 51-52.) Geostellar also alleges that on an unspecified date in November 2017, Mr. Levine "traveled to Los Angeles at [Geostellar's] expense . . . for the ostensible purpose of addressing a [November 18, 2017] conference as the representative of Geostellar" to promote Zydeco, but instead promoted APL's cryptocurrency, Indecoin. (*Id.* at 11 ¶ 54-55.) Geostellar provides no details of what Mr. Levine was to do to promote Zydeco or what he allegedly did to promote Indecoin.

On December 5, 2017, Indeco, LLC filed a document with the Securities and Exchange

4

Commission ("SEC") stating that it intended to sell Indecoin.  (*Id.* at 9 ¶ 43.)  Geostellar makes the conclusory claims that this document appropriated "ideas" expressed in a SEC filing Mr. Levine had previously made for Geostellar and that Mr. Levine "appropriated the business plan of Geostellar" for unspecified "competing companies which he had created."  (*Id.* at 9-10 ¶ 44.)  However, Geostellar does not attach any of these documents or identify any similarities between them.  Indeed, Geostellar does not even identify the "competing companies" that supposedly appropriated its business plan.

Geostellar also claims that on an unspecified date, one of its websites "was revised to transfer web traffic to a website for Indeco, LLC without the approval of [its] Board of Directors," but it makes no allegations as to who allegedly made this transfer or why.  (*Id.* at 12 ¶ 60.)

APL and Indeco, LLC were later merged and are now Indeco Union.  (Id. at 2-4 ¶ 10).

## ARGUMENT

### I.     Arbitration & Forum Selection Clauses

As an initial matter, Geostellar's own contracts prohibit it from bringing its Complaint in this Court.  Specifically, this Complaint is barred by the arbitration clause in the Employment Agreement and/or the forum selection clause in the Assignment of Inventions Agreement.[2]

There is "a broad 'federal policy favoring arbitration agreements,' and courts must 'rigorously enforce arbitration agreements according to their terms.'"  *E.g.*, *Santoro v. Accenture Fed. Servs., LLC*, 748 F.3d 217, 221 (4th Cir. 2014) (quoting *Moses H. Cone Mem'l Hosp. v.*

---

[2] The fact that Indeco Union did not sign these documents is immaterial as the claims against it are an extension of the claims against Mr. Levine.  *See Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 373 (4th Cir. 2012) (noting that signatory to arbitration clause is equitably estopped from arguing that clause is inapplicable to non-signatory where, as here, signatory "raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract" (quoting *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 396 (4th Cir. 2005)) (ellipsis and internal quotation marks omitted)).

5

*Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)) (citations omitted). "A party can compel arbitration if he establishes: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [nonmovant] to arbitrate the dispute." *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (quoting *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002)) (internal quotation marks omitted). "The question of whether an enforceable arbitration agreement exists between [the parties] is a matter of contract interpretation governed by state law." *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 699 (4th Cir. 2012). Where claims are brought in violation of an arbitration clause, they should be dismissed in favor of arbitration. *See, e.g.*, *Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.*, 683 F.3d 577, 579 (4th Cir. 2012) (reversing denial of motion to dismiss).

Here, the Employment Agreement states that the parties must arbitrate "any and all disputes, claims, or causes of action, in law or equity, arising from or relating to the enforcement, breach, performance or interpretation of this Agreement, [Mr. Levine]'s employment, or the termination of [Mr. Levine]'s employment." (Compl. Ex. A at 11 ¶ 7.11.) Geostellar's breach of contract is a claim for "breach . . . of this Agreement." Likewise, it cannot be disputed that all of the claims in the Complaint arise from or relate to Mr. Levine's employment. Nor can it be disputed that Mr. Levine's work for Geostellar relates to interstate commerce and that Geostellar has not pursued arbitration of the claims in this suit as required by the Employment Agreement. Accordingly, these claims must be arbitrated, not litigated in this Court.

Additionally, to the extent any part of the Complaint arises under the Assignment of

6

Inventions Agreement, those claims would be barred by the forum selection clause of that agreement. "As a general matter, courts enforce forum selection clauses unless it would be unreasonable to do so." *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Defense Acquisition Program Admin.*, 884 F.3d 463, 470 (4th Cir. 2018). Where a claim is brought in a forum that violates a mandatory forum selection clause, it must be "dismiss[ed] pursuant to the common-law doctrine of *forum non conveniens*." *Id.*

Here, the Assignment of Inventions Agreement provides that "[a]ny action to enforce or construe this Agreement **shall** be **exclusively** initiated in any federal or state court of competent jurisdiction in Wilmington, Delaware." (Compl. Ex. B at 3 ¶ 12.1 (emphasis added).) There is nothing to indicate that the chosen forum of Delaware—which was selected by Geostellar itself and is Geostellar's home state (Compl. 1 ¶ 1)—would be unreasonable. Accordingly, to the extent any of the claims in the Complaint are brought under the Assignment of Inventions Agreement, they must be brought in a state or federal court in Wilmington, Delaware, not the present Court.

Any claims brought under the Assignment of Inventions Agreement must be litigated in Wilmington, Delaware, and any claims **not** brought under that agreement must be arbitrated. Either way, Geostellar may not bring its claims in this Court, and the Complaint should be dismissed in its entirety. *See Wheeling Hosp.*, 683 F.3d at 579; *BAE*, 884 F.3d at 470.

## II.   Standing

Before moving on to the substance of the Complaint, Defendants note that the Geostellar makes several allegations asserting injuries to third parties. (*See* Compl. 6, 10-11 ¶¶ 23-25, 47, 56 (accusing Mr. Levine of injuring Matador Solar Partners, Inc.); Compl. 7-9 ¶¶ 29-30, 34, 38-42 (accusing Mr. Levine of injuring unknown potential investors in his cryptocurrencies).)

It is a fundamental principle of standing that a party cannot seek relief for injuries allegedly

7

sustained by another. *E.g.*, *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002) ("In order to satisfy Article III's standing requirements, the plaintiff must show that: (1) he has suffered an injury in fact."). Here, the above-referenced allegations do not allege any purported wrongs against Geostellar, but instead concern alleged injuries to third parties. The Complaint provides no basis for concluding that Geostellar was harmed by these actions.[3] Accordingly, Geostellar lacks standing to base any claims on these allegations, and these paragraphs should be stricken as immaterial. *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading . . . any redundant, *immaterial*, impertinent, or scandalous matter." (emphasis added)).

### III.     Failure to State a Claim

Finally, even if the claims in the Complaint could properly be brought in this Court (they cannot), they are unsupported by the Complaint's factual allegations. "[T]he Supreme Court has held that a complaint must contain 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (brackets omitted).

Instead, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief *that is plausible on its face*." *Francis*, 588 F.3d at 193 (quoting *id.*) (brackets and internal quotation marks omitted). This standard "requires the plaintiff

---

[3] While Geostellar asserts that Mr. Levine's actions "exposed Geostellar, Inc., to claims of breach of contract by Matador Solar Partners, Inc.," (Compl. at 11 ¶ 56), it does not allege that Matador has *actually* brought such a claim against Geostellar. Such speculative harm cannot provide Geostellar with standing to seek recompense for a lawsuit that has never been filed, and likely will never be filed. *See Friends for Ferrell Parkway*, 282 F.3d at 320 ("The alleged injury must not be 'conjectural or hypothetical.'" (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000))).

8

to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

### A. The Complaint Fails to State a Breach of Contract Claim Against Indeco Union

First, Geostellar has failed to state a breach of contract claim against Indeco Union. "In West Virginia, the elements of breach of contract are (1) a contract exists between the parties; (2) a defendant failed to comply with a term in the contract; and (3) damage arose from the breach." *Wittenberg v. Wells Fargo Bank, N.A.*, 852 F. Supp. 2d 731, 749 (N.D.W. Va. 2012); *accord Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Super. Ct. 2005) (Delaware law). Here, Geostellar does not allege that it ever entered into a contract with Indeco Union, much less that Indeco Union breached such a contract. Accordingly, Geostellar's breach of contract claim against Indeco Union should be dismissed.

### B. The Complaint Fails to State a Claim of Fraud

Geostellar has also failed to state a claim against either Defendant for fraud. "The essential elements in an action for fraud are: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it." *Lengyel v. Lint*, 167 W. Va. 272, 276-77, 280 S.E.2d 66, 69 (1981); *accord Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).

The Federal Rules of Civil Procedure require claims of fraud to be pled with more particularity than other claims. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This "standard requires a

9

party to, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby. These facts are often referred to as the who, what, when, where, and how of the alleged fraud." *Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II, Inc.*, 888 F.3d 696, 705 (2018) (quoting *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)) (internal quotation marks omitted).

Here, Geostellar's fraud claims fail because the Complaint does not allege with particularity a factual basis for these elements. Not only does Geostellar not allege "the who, what, when, where, and how of" any false statements Defendants purportedly made to it, Geostellar does not even allege that Mr. Levine or Indeco Union ever made such a statement, or that Geostellar relied on such a statement.

Instead, the only statement that Geostellar asserts is false is the statement in an unspecified document accompanying the September 2017 presentation that "that the cryptocurrency being developed by Geostellar, Inc., had some intrinsic value because" it had "some relationship" to a watt of solar energy. Geostellar neither provides nor quotes this document, but merely asserts that it was false. This assertion is questionable at best,[4] and without a copy of the document, or at least an exact quote, it is impossible to discuss whether this assertion was false. It is for this very reason that the heightened pleading standards of Rule 9 were created for fraud claims. Moreover, even assuming per arguendo that Geostellar has adequately pled that this statement was false, Geostellar does not allege that it relied on this statement or was harmed by that reliance.

But even if Geostellar's fraud claim against Mr. Levine were properly pled (it cannot be

---

[4] *See, e.g.*, Jake Frankenfield, *Do Cryptocurrencies Have Intrinsic Value? It Depends*, INVESTOPEDIA (June 25, 2019), https://www.investopedia.com/news/does-crypto-have-intrinsic-value-bitcoin-ethereum/.

disputed that Geostellar pleads no fraudulent statements by Indeco Union), this claim suffers from a more fundamental flaw: It is barred by West Virginia's "gist of the action" doctrine. *Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 231 W. Va. 577, 586, 746 S.E.2d 568, 577 (2013). "Under this doctrine, recovery in tort will be barred when ***any*** of the following factors is demonstrated: (1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim." *Id.* (emphasis added); *see also Abbott Labs v. Owens*, No. 13C–09–186, 2014 WL 8407613, at *7 (Del. Super. Ct. Sept. 20, 2014) (holding that tort claims, including fraud, are prohibited where, as here, the tortious conduct occurred in performance of a contract). Here, Geostellar's fraud claim against Mr. Levine "essentially duplicates the breach of contract claim"— indeed, all of Geostellar's allegations of fraud are expressly tied to the alleged breaches of contract. (Compl. 8-11 ¶¶ 35-37, 42, 45, 50, 53, 57.) Accordingly, Geostellar's fraud claims should be dismissed both for failure to properly allege fraud and for violating the gist of the action doctrine.

### C. The Complaint Fails to State a Claim of Breach of Fiduciary Duty

Geostellar has likewise failed to state a claim against either Defendant for breach of fiduciary duty. "Although [West Virginia] has not previously identified precisely the elements of a cause of action for a breach of a fiduciary duty, courts have held that the elements of such a cause of action are the existence of the fiduciary relationship, its breach, and damage proximately caused by that breach." *State ex rel. Affiliated Const. Trades Found. v. Vieweg*, 205 W. Va. 687, 701, 520 S.E.2d 854, 868 (1999) (Workman, J., concurring); *accord Estate of Eller v. Bartron*, 31 A.3d 895, 897 (Del. 2011) ("To establish liability for the breach of a fiduciary duty, a plaintiff must

11

demonstrate that the defendant owed her a fiduciary duty and that the defendant breached it.").

Geostellar's breach of fiduciary duty claims against Mr. Levine are barred by the gist of the action doctrine for the same reasons as Geostellar's fraud claim. Indeed, all of the allegations on this claim (other than the general allegation that Mr. Levine had fiduciary duties) expressly tie the alleged breaches of Mr. Levine's fiduciary duties to the alleged breaches of his contracts with Geostellar, using phrases such as "in breach of his contractual and other fiduciary duties."[5] (Compl. 8-12 ¶¶ 35-36, 42, 45, 50, 53, 57, 60-61.) Thus, it cannot be disputed that the breach of fiduciary duties claim against Mr. Levine "essentially duplicates the breach of contract claim," rendering it improper as a matter of law. Meanwhile, the Complaint provides no basis for concluding that Indeco Union even had any fiduciary duties to Geostellar. Accordingly, Geostellar has failed to state a claim of breach of fiduciary duty.

### D. The Complaint Fails to State a Claim of Conspiracy

Finally, Geostellar has failed to state a claim against either Defendant for conspiracy. "A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." *Dunn v. Rockwell*, 225 W. Va. 43, 56, 689 S.E.2d 255, 268 (2009) (quoting *Dixon v. Am. Indus. Leasing Co.*, 162 W. Va. 832, 834, 253 S.E.2d 150, 152 (1979)) (brackets omitted); *see also Lipson v. Anesthesia Servs., P.A.*, 790 A.2d 1261, 1288-89 (Del. Super. Ct. 2001) ("The elements of a civil conspiracy claim are: 1) a confederation or combination of two or more persons; 2) an unlawful act in furtherance of the conspiracy; and 3) actual damages."). "A civil conspiracy is not a *per se,* stand-alone cause of action; it is instead a legal doctrine under which liability for a tort

---

[5] The only exception is the allegation that Mr. Levine had a duty to preserve certain intellectual property that was pledged to a third party. (Compl. 6 ¶ 25.) However, as discussed supra, Geostellar alleges no non-speculative basis for finding that these actions damaged Geostellar.

may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." *Dunn*, 225 W. Va. at 57, 689 S.E.2d at 269; *accord Lipson*, 790 A.2d at 1289 (same).

Here, Geostellar claims that Mr. Levine wrongfully conspired with Indeco Union and its predecessors. (Compl. 9 ¶ 42, 11 ¶ 53, 57, 12 ¶ 59.) "It is axiomatic that a corporation acts only through its officers, agents, and employees and that a corporation cannot conspire with its own employees." *Princeton Ins. Agency, Inc. v. Erie Ins. Co.*, 225 W. Va. 178, 187, 690 S.E.2d 587, 596 (footnote omitted) (2009); *accord Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.*, No. Civ.A. 19890-NC, 2005 WL 578972, at *7 & nn. 39-40 (Del. Ch. Mar. 3, 2005) (collecting cases). Geostellar's own Complaint indicates that Mr. Levine has worked for Indeco Union and its predecessors ever since they were founded. (*See* Compl. 2-4 ¶ 10, 10-11 ¶ 52, 12 ¶ 61.) Because these entities cannot conspire with their own employee, Geostellar's conspiracy claim fails as a matter of law and should be dismissed for failure to state a claim.

Moreover, even if Indeco Union could conspire with its own employee (it cannot), Geostellar has failed to alleged facts giving rise to a conspiracy claim. This is because Geostellar has failed to adequately allege an underlying tort. As noted, conspiracy is "a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves." *Dunn*, 225 W. Va. at 57, 689 S.E.2d at 269. Here, the only other torts alleged by Geostellar consist of its breach of fiduciary duty and fraud claims. However, as discussed above, Geostellar has failed to state a claim of breach of fiduciary duty or fraud. Accordingly, for this reason also, Geostellar's conspiracy claims must fail.

## **CONCLUSION**

The underlying contracts require this case to be submitted to arbitration or, to the extent

any claims are brought under the Assignment of Inventions Agreement, be litigated in Wilmington, Delaware. Because Geostellar cannot bring these claims in this Court, its Complaint must be dismissed. Alternatively, Geostellar's claims should be dismissed for failure to state a claim upon which relief can be granted. Finally, in the event that any portion of the Complaint is not dismissed, paragraphs 23-25, 29-34, 38-42, 47, and 56 of the Complaint should be stricken as immaterial because Geostellar lacks standing to bring these allegations.

Dated:  August 23, 2019                                          Respectfully submitted,

**DAVID A. LEVINE**
**INDECO UNION**

*By Counsel*

*/s/* Cortland C. Putbrese
Cortland C. Putbrese (WV Bar No. 7780)
Dunlap Bennett & Ludwig PLLC
8003 Franklin Farms Drive, Ste. 220
Richmond, Virginia 23229
(804) 977-2688 (t)
(804) 977-2680 (f)
cputbrese@dbllawyers.com
*Counsel for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of August 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF filing system, which will automatically notify all registered counsel of record.

>*/s/* Cortland C. Putbrese
>Cortland C. Putbrese (WV Bar No. 7780)
>Dunlap Bennett & Ludwig PLLC
>8003 Franklin Farms Drive, Ste. 220
>Richmond, Virginia 23229
>(804) 977-2688 (t)
>(804) 977-2680 (f)
>cputbrese@dbllawyers.com
>*Counsel for Defendants*