IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:  GEOSTELLAR, INC.　　　　　　　　　　BK. NO. 3:18-BK-0045

MARTIN P. SHEEHAN, Trustee of
the Bankruptcy Estate of Geostellar, Inc.,

　　　　　　　　　　　　　　　　　　　　　　　CIVIL NO. 3:19-AP-00024

　　　Plaintiff,

v.

DAVID A. LEVINE, and
INDECO UNION, a Delaware Corporation,

　　　Defendants.

## PLAINTIFF'S BRIEF OPPOSING ARBITRATION

NOW COMES Plaintiff Martin P. Sheehan, by his counsel Patrick S. Cassidy and Timothy F. Cogan and CASSIDY, COGAN, SHAPELL & VOEGELIN, L.C. and Martin P. Sheehan, Esq., and Sheehan & Associates, PLLC and respectfully submits this Brief Opposing Arbitration.

When suit against David Levine ("Levine") was initiated by the Bankruptcy Estate of Geostellar, Inc., he (and Indeco) contested the jurisdiction of the Bankruptcy Court and asserted that the dispute was subject to arbitration.

The Court held the motion to dismiss of Levine and Indeco in abeyance and tentatively ordered arbitration but then raised the issue of whether claims filed by Geostellar were affected by Levine's seeking protection. It indeed is.

What was before the Bankruptcy Court as an asset of the Bankruptcy Estate of Geostellar, Inc., is now also before the Bankruptcy Court as a claim against David Levine.[1]

---

[1] Indeco Union is listed as an asset of David Levine. The independence of that entity is doubtful. Judge Flatley disregarded the independent existence of Indeco Union in footnote 2 of his opinion at Docket Entry 14 in this

## SINCE LEVINE FILED A PETITION FOR BANKRUPTCY RELIEF, HE CONSENTED TO BANKRUPTCY COURT HANDLING THE PROOF OF CLAIM AND ADVERSARY ACTIONS

The resolution of a claim against David Levine is a core matter. 28 U.S.C. section 157(b)(2)(B). The resolution of the dischargeability of the claims against David Levine is also a core matter. 11 U.S.C. 157(b)(2)(I).

David Levine invoked the protection of the Bankruptcy Courts when he asserted a claim against the Bankruptcy Estate of Geostellar, Inc. He was then sued by Geostellar, Inc., in this adversary proceeding that was filed in the Geostellar, Inc. case.

Mr. Levine has now become a debtor in his own bankruptcy. The claim asserted by Geostellar, Inc., has been filed against Mr. Levine in his own case.[2] By his action, Mr. Levine has again consented to the resolution of this claim, encompassing the adversary complaint against him, by this Court. See *Langenkamp v. Culp,* 498 U.S. 42, 45, (1990)(*per curiam*)(Respondents filed claims against the bankruptcy estate, thereby bringing themselves within the equitable jurisdiction of the Bankruptcy Court).

Even if these claims were "*Stern*" claims, see *Stern v. Marshall,* 564 U.S. 462, 131 S.Ct. 2594 (2011)(some claims may be statutorily core, but not constitutionally core),such claims as have been designated for final adjudication in this Bankruptcy Court case are not subject to arbitration as set forth below.

An exception to *Stern* applies here. The Bankruptcy Court can handle *Stern* claims with the parties' knowing and voluntary consent. *Wellness Intern. Network, Ltd. v. Sharif,* 575 U.S. 665, 135 S.Ct. 1932 (2015). "In sum, the cases in which this Court has found a violation of a

---

Adversary Proceeding. Moreover, the claim of arbitration was in a contract to which Mr. Levine, and not Indeco Union, was a party.

[2] The Trustee of Geostellar, Inc. filed a motion to lift stay, or in the alternative to transfer this Adversary Proceeding to be an Adversary Proceeding in the Levine case, rather than the Geostellar case. See Docket Entry 48 in the Levine Bankruptcy Case, 3:19-bk-01048.

{00177678.1} 2

litigant's right to an Article III decision-maker have involved an objecting defendant forced to litigate involuntarily before a non-Article III court" *Wellness Intern. Network,* 575 U.S., at ___ 135 S.Ct., at 1947.

There the defendant in an adversary proceeding consented to the handling of the claim by its filing a bankruptcy petition, as Levine did here. "Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express." *Wellness*, 135 S.Ct. at 1947. Thus

> Article III of the Constitution is not violated when litigants knowingly and voluntarily consent to adjudication by a bankruptcy judge of so-called "*Stern* claims," that is, claims that are designated for final adjudication in the bankruptcy court as a statutory matter but are prohibited from proceeding in that way as a constitutional matter

*Construction and Application of United States Supreme Court Decision in Stern v. Marshall, …Clarifying Constitutional Authority of Bankruptcy Court to Hear and Resolve Claims and Counterclaims.* 77 A.L.R. Fed. 2d 23 (Originally published in 2013), characterizing *Wellness*.

Such consent may be express or implied. *MDC Innovations, LLC v. Hall,* 726 Fed.App'x. 168, 172 (4th Cir.2018); *In re Sojourner Douglas College, Inc.,* 607 B.R. 501, 512 (Bankr. D. Md.2019).

The "key inquiry" under this standard is "'whether the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the non-Article III adjudicator.'" *MDC Innovations,* 726 Fed.Appx. at 172 (quoting *Wellness,* 135 S.Ct., at 1948) (internal quotation marks omitted). *MDC Innovators*, like the case at bar, contains questions of entitlement of rights to intellectual property. See also *Corliss Moore & Assoc., LLC v. Credit Control Services, Inc.*, 497 B.R. 219, 228–29 (E.D.Va.2013), which held that an entity had consented to the jurisdiction of the Bankruptcy Court. After the Plan was proposed, but before it was approved, Debtors contracted with Credit Control Services ("CCS"). The Trustee subsequently filed an adversary proceeding complaint in Bankruptcy Court, naming

CCS as a defendant for breach of that contract. The court held that the defendant in that proceeding had impliedly consented to the jurisdiction of the Bankruptcy Court by entering into that post-petition contract to collect the receivables of a debtor under the jurisdiction of the Bankruptcy Court. *Id* at 228. That defendant in an adversary proceeding was actively involved in the Bankruptcy Court, as was Levine here, Both impliedly consented, even if the adversary proceeding were a *Stern* claim. *Id.* See *In re Kaiser Steel Corp.,* 95 B.R. 782 (Bankr.D.Colo.1989), *aff'd,* 109 B.R. 968 (D.Colo.1989)(by asserting a counterclaim against the debtor in the adversary proceeding, the Rosens subjected themselves to the equitable power of the Bankruptcy Court).

## EVEN IF LEVINE HAD NOT CONSENTED TO THE JURISDICTION OF THE BANKRUPTCY COURT, THE ADVERSARY COMPLAINT SATISFIES *STERN* AS A CORE MATTER

Jurisdiction of the District Court over bankruptcy matters is set forth in *28 U.S.C. § 1334*. Original and exclusive jurisdiction exists of all cases under Title 11. That statute also authorizes Bankruptcy Courts, as an adjunct of the District Court, to adjudicate cases arising "under title 11," or "arising in" or "related to" a case under Title 11. Pursuant to *28 U.S.C. § 157(a),* the District Court may refer all such matters to the Bankruptcy Court. "Through the enactment of 28 U.S.C. § 1334, Congress intended to grant broad and comprehensive jurisdiction to the district courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *In re Roasters Corp.,* 2000 WL 33673775, *1 (M.D.N.C. Oct. 6, 2000) (citing *Celotex v. Edwards,* 514 U.S. 300 (1995)).

Core matters include "allowance or disallowance" of claims, *§157(b)(2)(B);* and determinations as to the dischargeability of debts, *§ 157(b)(2)(J).* The claims against Mr. Levine

by the Bankruptcy Estate of Geostellar, Inc., are clearly within that rubric. The claims made against Mr. Levine in the pending litigation are clearly "core."

Core proceedings are not arbitrable since arbitration would interfere with the ability of the Bankruptcy Courts to adjudicate matters clearly assigned to such courts. See *Moses v. Cash Call, Inc.*, 781 F.3d 63 (4th Cir. 2015)(opinion of all members of the panel). There a declaratory judgment claim of the Debtor seeking to adjudicate the claim of a creditor as invalid, and in violation of State law was held core, and non-arbitrable.

> The underlying principles that are applicable here are not in dispute. Bankruptcy courts may decide core bankruptcy claims, which include the "allowance or disallowance of claims against the estate" and "counterclaims by the estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(2)(B)-(C). A bankruptcy court may also hear related non-core claims, but it cannot finally resolve them and must instead submit proposed findings of fact and conclusions of law to the district court. *Id.* § 157(c)(1).
>
> The Supreme Court has modified these statutory assignments of responsibility, holding that Article III of the Constitution prohibits bankruptcy courts from issuing final orders regarding statutorily core claims unless they "stem [ ] from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern* [ 564 U.S. at 499]. And the Court has subsequently held that when a bankruptcy court is faced with a claim that is *statutorily* core but *constitutionally* non-core—a so-called "Stern claim"—it must treat the claim as if it were statutorily non-core, submitting proposed findings of fact and conclusions of law to the district court for *de novo* review. *Exec. Benefits Ins. Agency v. Arkison,* ––– U.S. ––––, 134 S.Ct. 2165, 2173… (2014).
>
> Here, there is no dispute that Moses' first claim, which seeks to declare that CashCall's loan is unenforceable, is a statutorily core claim because such an action involves the "allowance or disallowance of claims against the estate." 28 U.S.C. § 157(b)(2)(B). **It is also constitutionally core, because the validity of the Loan Agreement would "necessarily be resolved" in adjudicating CashCall's proof of claim and Moses' objections thereto.** *Stern,* 131 S.Ct. at 2618; *see also, e.g., TP, Inc. v. Bank of Am., N.A. (In re TP, Inc.),* 479 B.R. 373, 385 (Bankr.E.D.N.C.2012) (holding that "a counterclaim by the estate based in state law" will necessarily be resolved in ruling on a proof of claim if it "seek[s] to directly reduce or recoup the amount claimed"); *Pulaski v. Dakota Fin., LLC (In re Pulaski),* 475 B.R. 681, 687 (Bankr.W.D.Wis.2012) (holding that an objection to a proof of claim based on violations of state law was constitutionally

core); *In re Olde Prairie Block Owner, LLC,* 457 B.R. 692, 698 (Bankr.N.D.Ill.2011).

*Moses,* 781 F.3d at 70.

*Allied Title Lending, LLC v. Taylor,* 420 F.Supp.3d 436, 449 (E.D.Va.2019), a post-*Cash Call* case, held that an Allied debtor seeking monetary relief for herself and a class of similarly situated debtors in the Bankruptcy Court was a core claim, for the class claims "will likewise directly modify the amount of the claims filed by Allied against similarly situated debtors". *Allied Title Lending* 420 F.Supp.3d at 449, generally citing *Cash Call*, 781 F.3d at 85. Accord *In re Relativity Fashion, LLC,* 696 Fed. Appx. 26 (2d Cir. 2017)(Bankruptcy Court could refrain from enforcing arbitration clause in agreement between bankrupt film producer and streaming video service asserting a right to stream two of debtor's films prior to their release in theaters, on theory that grant of video service's motion to compel arbitration would permit a collateral attack on factual findings and distributions of property underlying debtor's confirmed plan, which would cause key aspects of plan to collapse). See *In re EPD Inv. Co., LLC,* 821 F.3d 1146, 1152 (9th Cir.2016) (Trustee brought fraudulent transfer claims under 11 U.S.C. §§ 544 and 548, and California state law. "For the purpose of these claims, the Trustee stands in the shoes of the creditors, not the debtors. Only the *parties* to an arbitration agreement are bound by it."). See also *In re Hostess Brans, Inc.* 2013 WL 82914 at *4. (Bank. S.D.N.Y. 2013 Jan 7, 2013)(dispute relate to cash collateral not arbitrable though the collateral agreement contained an arbitration clause).

## ASSUMING THAT THE ISSUE OF ORDERING ARBITRATION OVER A CORE MATTER IS CONSIGNED TO THE COURT'S DISCRETION, IT SHOULD NOT BE ORDERED

The following factors show that arbitration should not be ordered, under an abuse of discretion standard.

{00177678.1}                                   6

Arbitration would undermine centralized resolution of bankruptcy claims and would engender piecemeal litigation. *In re Power Technologies, Inc.*, 315 B.R. 41, 43 Bankr. Ct. Dec. (CRR) 177 (Bankr. W.D. Pa. 2004).

Issues raised in the Complaint can be more expeditiously heard and determined by the Bankruptcy Court and the debtor's rehabilitation requires prompt disposition of the asserted claim, while arbitration would be a protracted proceeding. *In re Cross Elec. Co., Inc.*, 9 B.R. 408, 7 Bankr. Ct. Dec. (CRR) 366, 3 *Collier Bankr. Cas. 2d* (MB) 925, Bankr. L. Rep. (CCH) P 68201 (Bankr. W.D. Va. 1981).

Judicial discovery is required and no alternative is available in arbitration. <u>See</u> 105 Am. Jur. Trials 125 (Originally published in 2007).

**THIS IS NOT A TRUE *STERN* CLAIM SINCE NOTHING WOULD BE LEFT AFTER THE BANKRUPTCY COURT DETERMINE GEOSTELLAR'S PROOF OF CLAIM, UNLIKE IN *MOSES***

Since the Bankruptcy Court must determine if Geostellar's proof of claim in the Levine bankruptcy case was proper, that would determine the adversary claim in the Geostellar case, which Levine and Indeco seek to arbitrate. Here Geostellar's would "necessarily be resolved in the claims allowance process." *Stern,* ___ U.S. at__131 S.Ct. at 2618.

This is apparent from a review of the proof of claim. All the proof of claim amounts to is the complaint. Thus in resolving that proof of claim, the Bankruptcy Court must resolve certain factual matters in the Complaint such that would be nothing left for arbitration.

This claim differs *Moses* indicated that a remaining, constitutionally non-core claim would be left whether the debt ran afoul of a North Carolina statute. Here no similar additional claim remains beside the proof of claim. Thus the adversary claims would "necessarily be resolved in the claims allowance process."

Illuminating what it meant by such resolution, *Stern* pointed to a distinction along a slightly different axis: "*Granfinanciera*'s distin[guished] between actions that seek 'to augment the bankruptcy estate and those that seek a pro rata share of the bankruptcy res,'" 564 U.S. at 499 (quoting *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, (1989)). This adversary action seeks "to augment the bankruptcy estate." To that extent it is a creature of the bankruptcy law.

There appears the congruence between the complaint and the resolution of the claim

> "any of the factual and legal determinations that the bankruptcy court would be required to make in the adversary proceeding would be 'disposed of in passing on objections' to [a] proof of claim," *Id.* at 2617 (quoting *Katchen v. Landy,* 382 U.S. 323, 332 n. 9 (1966))

*Mose,* quoting *Stern.*

Questions driving the adversary claim here and the proof of claim are "so overlapping that once the bankruptcy judge ruled on the creditor's proof of claim "nothing remain[ed] for adjudication," *Moses* (quoting *Stern*, quoting *Katchen*, 382 U.S. at 334 and *Exec. Benefits Ins. Agency,* 134 S.Ct. at 2173)(internal quotation marks omitted in Moses). *Executive Benefits* held that, because the Constitution does not permit a bankruptcy court to enter final judgment on a bankruptcy-related claim, the relevant statute nevertheless permits a bankruptcy court to issue proposed findings of fact and conclusions of law to be reviewed *de novo* by the district court.

**THIS IS NOT A TRUE *STERN* CLAIM SINCE NOTHING WOULD BE LEFT AFTER THE BANKRUPTCY COURT DETERMINES GEOSTELLAR'S PROOF OF CLAIM, UNLIKE IN *MOSES***

Since the Bankruptcy Court must determine if Geostellar's proof of claim in the Levine bankruptcy case was proper, that would determine the adversary claim in the Geostellar case, which Levine and Indeco seek to arbitrate. Here Geostellar's would "necessarily be resolved in the claims allowance process." *Stern,* ___ U.S. at__131 S.Ct. at 2618.

This is apparent from a review of the proof of claim. All the proof of claim amounts to is the Complaint. Thus in resolving that proof of claim, the Bankruptcy Court must resolve certain factual matters in the complaint such that would be nothing left for arbitration.

This claim differs. *Moses* indicated that a remaining, constitutionally non-core claim would be left whether the debt ran afoul of a North Carolina statute. Here no similar additional claim remains beside the proof of claim. Thus the adversary claims would "necessarily be resolved in the claims allowance process."

Illuminating what it meant by such resolution, *Stern* pointed to a distinction along a slightly different axis: "*Granfinanciera*'s distin[guished] between actions that seek 'to augment the bankruptcy estate and those that seek a pro rata share of the bankruptcy res,'" 564 U.S. at 499 (quoting *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, (1989)). This adversary action seeks "to augment the bankruptcy estate." To that extent it is a creature of the bankruptcy law.

There appears the congruence between the complaint and the resolution of the claim

> "any of the factual and legal determinations that the bankruptcy court would be required to make in the adversary proceeding would be 'disposed of in passing on objections' to [a] proof of claim," *id.* at 2617 (quoting *Katchen v. Landy,* 382 U.S. 323, 332 n. 9 (1966))

*Mose,* quoting *Stern.*

Questions driving the adversary claim here and the proof of claim are "so overlapping that once the bankruptcy judge ruled on the creditor's proof of claim "nothing remain[ed] for adjudication," *Moses* (quoting *Stern*, quoting *Katchen*, 382 U.S. at 334 and *Exec. Benefits Ins. Agency,* 134 S.Ct. at 2173)(internal quotation marks omitted in *Moses*). *Executive Benefits* held that, BECAUSE the Constitution does not permit a bankruptcy court to enter final judgment on a bankruptcy-related claim, the relevant statute nevertheless permits a bankruptcy court to issue proposed findings of fact and conclusions of law to be reviewed *de novo* by the district court.

## EVEN IF THIS PROOF OF CLAIM WERE NOT A CORE CLAIM, ARBITRATION IN THIS CASE WOULD CREATE IN INHERENT CONFLICT WITH THE PURPOSES OF THE BANKRUPTCY CODE

>The core/non-core distinction, however, is not mechanically dispositive in deciding whether a bankruptcy judge may refuse to send a claim to arbitration. *See Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.),* 671 F.3d 1011, 1021 (9th Cir.2012) ("We agree that the core/non-core distinction, though relevant, is not alone dispositive."); *In re Mintze,* 434 F.3d 222, 229 (3d Cir.2006) ("The core/non-core distinction does not ... affect whether a bankruptcy court has the discretion to deny enforcement of an arbitration agreement."). Instead, what matters fundamentally is whether compelling arbitration for a claim would inherently undermine the Bankruptcy Code's animating purpose of facilitating the efficient reorganization of an estate through the "[c]entralization of disputes concerning a debtor's legal obligations...." *Phillips v. Congelton, LLC (In re White Mountain Mining Co.),* 403 F.3d 164, 170 (4th Cir.2005).

*Moses v. Cash Call, Inc*., 781 F.3d 63, 83 (4th Cir.2015)(Gregory., J., concurring and concurring in judgment).

>Repeatedly considering *Moses* cites the purposes of the Bankruptcy Code.

>Grounded in the Constitution, bankruptcy provides debtors with a fresh start and creditors with an equitable distribution of the debtor's assets. To those ends, a principal purpose of the Bankruptcy Code is to provide debtors and creditors with "the prompt and effectual administration and settlement of the [debtor's] estate." *Katchen,* 382 U.S. at 328,…*see also Celotex,* 514 U.S. at 308,… Similarly, a principal purpose of the Bankruptcy Code is also to centralize disputes over the debtor's assets and obligations in one forum, thus protecting both debtors and creditors from piecemeal litigation and conflicting judgments. *See Phillips v. Congelton, L.L.C. (In re White Mountain Mining Co.),* 403 F.3d 164, 169–70 (4th Cir.2005); *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 998 (4th Cir.1986). "Ease and centrality of administration are thus foundational characteristics of bankruptcy law." *French v. Liebmann (In re French),* 440 F.3d 145, 154–55 (4th Cir.2006) (Wilkinson, J., concurring).

*Moses* 781 F.3d at 72.

>At the same time, however, "Congress intended to grant comprehensive jurisdiction to bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex*

*Corp. v. Edwards,* 514 U.S. 300, 308 (1995) (internal quotation marks and citation omitted). And in cases where tension arises between the FAA and another statute, the Supreme Court has provided a framework for resolving it, holding that the party seeking to prevent enforcement of an applicable arbitration agreement must show that "Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 90 (2000). That intent must be deducible from (1) the statute's text; (2) its legislative history; or (3) "an inherent conflict between arbitration and the statute's underlying purposes".

*Moses,* 781 F.3d 71–72(citing *Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 227 (1987); see also *Gilmer v. Interstate/Johnson Lane Corp.,* 895 F.2d 195, 197 (4th Cir.1990), aff'd, 500 U.S. 20 (1991). See *Midland, infra* and *CH Holding Co. v. Miller Parking Co.,* 903 F. Supp. 2d 51 (E.D. Mich. 2012)(Thus a judgment creditors' state court action alleging that defendants were alter egos or fraudulent transferees of assets of Chapter 7 debtor was core proceeding. Thus mandatory abstention was not warranted, where judgment creditors' claims against transferee and its shareholders were solely designed to recover assets that judgment creditors and bankruptcy trustee contended were debtor's rightful property and therefore belonged to bankruptcy estate. 28 U.S.C.A. §§ 157(b), 1334(c). See generally *Arbitration and Mediation of Bankruptcy Disputes*, 105 AM. JUR. TRIALS 125.

Because *Moses* is a split decision, with three separate opinions, relying upon the unusual, if not bizarre, requirements of lenders such as *Cash Call*, it is profitable to consider post- *Moses* jurisprudence – as well as cases preceding it.

Pre-*Moses*, in *In re White Mountain Mining Co., L.L.C.,* 403 F.3d 164 (4th Cir.2005), aka *Congleton,* cited by *Moses*, above, a principal of corporate Chapter 11 debtor brought adversary proceeding against debtor and investor seeking determination as to whether pre-petition cash advances were debt or equity. The Bankruptcy Court denied investor's motion to compel arbitration. The District Court for the Southern District of West Virginia affirmed, as did the Fourth Circuit, holding that bankruptcy court did not abuse its discretion by refusing to enforce international arbitration agreement, and principal's complaint was core proceeding.

BANKRUPTCY L & PROCEDURE took the following from *Moses:*

> A claim, that is statutorily core and which the bankruptcy court would have constitutional authority to enter a final judgment, would include a debtor estate's counterclaim to a creditor's proof of claim that relates to the creditor's claim and is not merely peripheral to the core bankruptcy function of addressing the allowance of a proof of claim.[36]

Leslie A. Berkoff and Theresa A. Driscoll 28 NO. 4 J. BANKR. L. & PRAC. NL ART. 6, citing *inter alia Moses.*

*Moses* held that resolution of a claim "could directly impact claims against Moses' estate and her plan for financial reorganization" because if "a tribunal were to hold that *CashCall*'s loan is invalid, *CashCall* could petition the bankruptcy court as an 'allowed unsecured creditor' to share in Moses' assets." *Id.* at 72. If anything, this adversary proceeding would impact reorganization even more directly than that in *Moses*, for the adversary proceeding seeks damages from Levine's conduct, enriching the estate. Ordering arbitration of a dispute that "directly pertains to Moses' plan for reorganization would 'substantially interfere with [her] efforts to reorganize.'" *Id.* at 73 (quoting *Congelton, supra*, 403 F.3d at 170). Therefore, the Court concluded that "forcing Moses to arbitrate her constitutionally core claim would inherently conflict with the purposes of the Bankruptcy Code…" *Id.*

Cases relied upon that connection, between the action and the needs of the estate. *In re Merrill*, 343 B.R. 1, 8–9 (Bankr. D. Me.2006), indicated in part that an arbitration should not be ordered where would have an effect on a bankruptcy estate, as would the arbitration sought here. See *In re Lehman Bros. Holdings, Inc.,* 2015 WL 5729645, *5 (Sept. 30, 2015), aff'd *sub nom. In re: Lehman Bros. Holdings Inc.*, 663 Fed.App'x. 65 (2d Cir.2016), denying arbitration to the contractual subordination of deferred compensation claims by hundreds of employees. "While the Supreme Court has stated that the FAA established a 'federal policy favoring

arbitration, requiring that [courts] rigorously enforce agreements to arbitrate," this mandate "may be overridden by a contrary congressional command.'" (quoting *Shearson,* 482 U.S. at 226 (internal citations and quotations omitted)).

Relying upon the above language from *Moses*, the district court held that the bankruptcy court did not err in failing to refer a claim to arbitration, for resolution of this claim "could directly impact claims against Moses' estate and her plan for financial reorganization". *Midland Funding LLC v. Thomas,* 606 B.R. 687, 693–94 (W.D.Va.2019)(citing 781 F.3d at 72). Here resolution of the Geostellar claim would "directly impact claims against Geostellar and its plan for financial reorganization," *supra*, meeting the *Midland Funding* standard:

> Ordering arbitration of a dispute that "directly pertains to Moses' plan for reorganization would 'substantially interfere with [her] efforts to reorganize.'" *Id.* at 73 (quoting *Phillips v. Congelton, LLC*, 403 F.3d 164, 170 (4th Cir. 2005)). Therefore, the court concluded that "forcing Moses to arbitrate her constitutionally core claim would inherently conflict with the purposes of the Bankruptcy Code." *Id.*

*Midland Funding LLC v. Thomas,* 606 B.R. 687, 693–94 (W.D.Va.2019).

The amended complaint in *Midland* alleged that the financial institution falsely stated on the bankruptcy form, violating Rule 3001, when it said that the amount claimed did not include interest, fees, or other charges; and that Midland failed to abide by other bankruptcy rules.

Even if the *Midland* fact pattern might come closer to the classical bankruptcy core, that complaint was a class action vehicle, thus moving far beyond the instant parties. Nonetheless the district court cited the purposes animating the Bankruptcy Code:

> …Two animating purposes of the Bankruptcy Code – prompt administration of the bankruptcy estate and the centralization of disputes regarding a debtor's legal obligations – would be severely undermined if a distant arbitrator was tasked with the discretion to determine if a creditor should be sanctioned for a Rule 3001 violation.

*Midland Funding LLC v. Thomas*, 606 B.R. 687, 693–94 (W.D.Va.2019).

Similarly, arbitration of claims that Chapter 7 debtor had brought, even as putative class action, to recover for credit card issuer's alleged violation of discharge injunction would seriously jeopardize an integral part of bankruptcy court's ability to provide debtors with fresh start and result in inherent conflict with underlying purpose of the Bankruptcy Code, providing the bankruptcy court with discretion to decline to enforce arbitration clause in credit card agreement. *In re Anderson,* 884 F.3d 382 (2d Cir. 2018).

Also post-*Moses,* arbitration of Chapter 7 debtor's claims seeking determination that certain debts were not non-dischargeable student loan debts as well as a finding that creditor violated the discharge injunction by attempting to collect those debts would impede debtor's ability to achieve a fresh start and create an inherent conflict with underlying purpose of Bankruptcy Code, such that compelling parties to arbitrate claims was not appropriate. *In re Golden,* 587 B.R. 414 2018 WL 3584644 (E.D. New York. July 25, 2018).

      Respectfully submitted,

      MARTIN P. SHEEHAN, Trustee of the
      Bankruptcy Estate of Geostellar, Inc.


      By: /s/ Patrick S. Cassidy, Esq.

Patrick S. Cassidy, Esq. (WVSB #671)
Timothy F. Cogan, Esq. (WVSB #764)
CASSIDY, COGAN,
SHAPELL & VOEGELIN, L.C.
1413 Eoff St.
Wheeling, WV 26003
P: 304-232-8100
F: 304-232-8200
pcassidy@walslaw.com
tfc@walslaw.com

{00177678.1}   14

Martin P. Sheehan, Esq. (WVSB 4812)
SHEEHAN & ASSOCIATES, PLLC
1 Community St.
Suite 200
Wheeling, WV 26003
(304) 232-1064
(304 232-1066 fax
SheehanBankruptcy@WVDSL.net

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE: GEOSTELLAR, INC.                           BK. NO. 3:18-BK-0045

MARTIN P. SHEEHAN, Trustee of
the Bankruptcy Estate of Geostellar, Inc.,

                                                            CIVIL NO. 3:19-AP-00024

    Plaintiff,

v.

DAVID A. LEVINE, and
INDECO UNION, a Delaware Corporation,

    Defendants.

### CERTIFICATE OF SERVICE

This is to certify that on the 30th day of April, 2020, the foregoing **PLAINTIFF'S BRIEF OPPOSING ARBITRATION** was filed electronically via the Court's EM/ECF filing system, which will send notification of such filing to all counsel of record.

                                                         By: /s/ Patrick S. Cassidy, Esq.

Patrick S. Cassidy, Esq. (WVSB #671)
Timothy F. Cogan, Esq. (WVSB #764)
CASSIDY, COGAN,
SHAPELL & VOEGELIN, L.C.
1413 Eoff St.
Wheeling, WV 26003
P: 304-232-8100
F: 304-232-8200
pcassidy@walslaw.com
tfc@walslaw.com